UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CHARLES WADE, III,<br><br>    Plaintiff,<br><br>    v.<br><br>Sheriff DAVID LAIN, Individually and in His Official Capacity as Porter County Sheriff; Warden JOHN J. WIDUP, Individually and in His Official Capacity as Warden of the Porter County Jail; Sergeant DAVID CAVANAUGH, in his Individual and Official Capacity; Medical Director KIM HOUSE, Individually in Her Capacity as Medical Director of the Porter County Jail; JOHN DOE Correctional Officers and Supervisor, in Their Individual and Official Capacities; JOHN or JANE DOE Medical Staff of the Porter County Jail, in Their Individual Capacities,<br><br>    Defendants. | Case No. 2:11-CV-454-JVB |

**OPINION AND ORDER**

This matter is before the Court on separate motions for summary judgment filed by Defendant Nurse Kim House (DE 114) and Defendants Sheriff David Lain, Warden John Widup, and Sergeant David Cavanaugh ("the Jail Defendants") (DE 117).[1] For the following reasons, Nurse House's motion is GRANTED, and the Jail Defendants' motion is GRANTED in part and DENIED in part.

---

[1] Plaintiff's Amended Complaint (DE 12) also names as defendants an unknown number of John and Jane Doe correctional officers and medical staff. However, "it is pointless to include lists of anonymous defendants in federal court; this type of placeholder does not open the door to relation back under Fed. R. Civ. P. 15, nor can it otherwise help the plaintiff." *Wudtke v. Davel,* 128 F.3d 1057, 1060 (7th Cir.1997) (citations omitted). Discovery may sometimes allow a previously unknown defendant to be named, but discovery in this case is now closed, and Plaintiff has not named or served any of the anonymous defendants. Accordingly, all John and Jane Doe Defendants are dismissed from this case pursuant to Federal Rule of Civil Procedure 4(m).

**I. Motions for Summary Judgment**

**A. Background**

Plaintiff Charles Wade, III, was held at the Porter County Jail as a pretrial detainee from 2010 to 2013. He sued Defendants on various grounds, of which three now remain: inadequate medical care in violation of his Fourteenth Amendment rights, and state law claims of negligence and intentional infliction of emotional distress (IIED).

Defendants maintain that the undisputed evidence shows that none of them engaged in conduct toward Plaintiff that reaches the threshold for negligence, IIED, or a violation of the Fourteenth Amendment. They also argue that there are no facts from which a jury could find a policy of inadequate medical care by the Porter County Sheriff's Department that would support supervisory or institutional liability. Jail Defendants further argue that the Indiana Tort Claims Act (ITCA) grants them immunity from Plaintiff's state-law tort claims.

**B. Legal Standard**

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A court must enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In viewing the facts presented on a motion for summary judgment, a court must construe them and draw all inferences in the light most favorable to the non-moving party. *Srail v. Vill. of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009). The court's role is not to evaluate the

weight of the evidence, judge the credibility of witnesses, or determine the truth of the matter, but to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings and evidence which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, "the adverse party's response . . . must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Inferences based on speculation or conjecture are not enough. *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014).

**C. Facts**

Drawing all reasonable inferences in Plaintiff's favor for the purpose of ruling on Defendants' motions for summary judgement, the relevant facts are as follows.

Plaintiff was held at Porter County Jail as a pretrial detainee from August 1, 2010 through January 2013. Jail policies for medically screening inmates included both an "intake screening" consisting of questioning by the booking officer, and a subsequent "medical screening" given to all inmates staying longer than fourteen days, and consisting of a physical exam and tuberculosis (TB) test. Throughout Plaintiff's time at Porter County Jail, medical services, including TB tests, were provided by the contractor Advanced Correctional Healthcare (ACH), Nurse House's employer. ACH had served in this role since at least 2004.

Despite the jail's written policy requiring that inmates be tested for TB within fourteen days of intake, ACH did not consistently administer these medical screenings. The screenings were "hit and miss," in the Warden's words, due to ACH understaffing. (DE 121-

9, Pl. Ex. H at 31.) Neither the original ACH contract nor subsequent amendments in 2007 and 2009 mentioned inmate screenings. In 2013, the Sheriff terminated the ACH contract and contracted with a new provider who increased staffing and ensured that all incoming prisoners did receive medical screenings.

Plaintiff, however, was not among those whom ACH failed to test. On August 2, 2010, Plaintiff was given a medical screening, and jail records indicate that Plaintiff tested negative for tuberculosis at this time.

During his detention, Plaintiff had frequent medical complaints, and Nurse House suspected him of malingering. In December 2010, he began to manifest symptoms consistent with TB, which included coughing up blood. As a result, he was isolated and tested again for TB. On December 22, 2010, the test returned a positive result (a 10 mm "bubble"). However, the result was only considered positive because, as a prisoner, Plaintiff was in a high-risk population. If Plaintiff had been a member of the general public, his result would have been considered negative.

TB may be either active (symptomatic and contagious) or latent (neither symptomatic nor contagious). To see if he had active TB, Plaintiff was hospitalized and given a sputum test. The sputum test was negative, indicating that Plaintiff did not have active TB.

Plaintiff was accordingly diagnosed and treated for latent TB. He was given isonicotinylhydrazine (INH), a powerful drug with side effects that include a risk of seizures. Near the end of his INH treatment, Plaintiff did have seizures, after having missed at least one dose of medication due to a conflict between a court date and the jail's "med pass" arrangements.

Meanwhile, in January 2011, Plaintiff also complained of constipation. Nurse House suspected that the complaint might be false or exaggerated, so she instructed jail staff to keep the running water turned off in Plaintiff's cell so that the toilet could not be flushed until his

bowel movements were inspected by staff. Once the bowel movement had been inspected, the running water would be turned on to allow the toilet to be flushed. This practice continued for several weeks.

**D. Analysis**

**(1) Defendants are entitled to summary judgment on Plaintiff's § 1983 claims except for the claim against the Porter County Sheriff's Department based on inadequate TB screening**

Plaintiff appears to state five separate theories of constitutional violations to support his § 1983 claim: inadequate protection from TB, seizures due to the missed dose of INH, the shutoff of water to his cell, indifference to Plaintiff's general medical needs, and overcrowding of the jail. (DE 121 at 68-69.) As set forth below, the only basis on which Plaintiff's § 1983 claim can survive is inadequate protection from TB by the Porter County Sheriff's Department.

**(a) Legal standard for § 1983 claims**

Section 1983 provides "a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes," but does not provide a separate source of constitutional rights. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 749 n.9 (1999). "[T]he plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forth with sufficient evidence to create genuine issues of material fact to avoid summary judgment." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010). To prevail on a claim under § 1983, a plaintiff must show that "(1) the defendant deprived the plaintiff of a right secured by the Constitution and laws of the United States, and (2) the defendant acted under color of state law." *J.H. v. Johnson*, 346 F.3d 788, 791 (7th Cir. 2003). Here, Defendants do

not dispute that they acted under color of state law, but do dispute whether they deprived Plaintiff of a constitutional right.

Plaintiff's rights as a pretrial detainee are protected by the Due Process Clause of the Fourteenth Amendment. "The protections for pre-trial inmates under the Due Process Clause are at least as great as those afforded inmates under the Eighth Amendment, and the standards are frequently considered to be analogous." *Guzman v. Sheahan,* 495 F.3d 852, 856 (7th Cir. 2007) (internal citations and quotation marks omitted). If a pretrial detainee has not argued for a higher standard, Eighth Amendment doctrine applies. *Forrest v. Prine*, 620 F.3d 739, 744 (7th Cir. 2010). Thus, since Plaintiff has not argued to the contrary, this Court will apply Eighth Amendment doctrine.

To make out a claim for constitutionally inadequate medical care under this Eighth Amendment standard, Plaintiff must show that Defendants were deliberately indifferent to a serious medical need, thereby placing him at a substantial risk of serious harm. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). Deliberate indifference entails a state of mind akin to criminal recklessness, in which the defendant "disregards a risk of harm of which he is aware." *Farmer v. Brennan*, 511 U.S. 825, 836–37 (1994).

### (b) A reasonable factfinder could conclude that the custom and practice of ignoring the jail's written policy regarding TB screenings constituted deliberate indifference to a substantial risk of serious harm

To prevail on his claim of constitutionally inadequate medical care under Eighth Amendment standards, Plaintiff must show deliberate indifference to a serious medical need which placed him at a substantial risk of serious harm. *Estelle,* 429 U.S. at 106. Even when a prisoner has no preexisting serious medical need, systematically inadequate medical care that creates a serious risk of disease can reach this threshold. *Bd. v. Farnham*, 394 F.3d 469, 479 (7th Cir. 2005). Knowingly maintaining inadequate safeguards against TB

can, in some cases, constitute deliberate indifference. *See DeGidio v. Pung*, 920 F.2d 525, 533 (8th Cir. 1990) (finding an Eighth Amendment violation where inadequate safeguards led to 200 inmates contracting TB); *cf. Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) (finding no Eighth Amendment violation where an inmate contracted TB despite thorough safeguards). In this case, for the following reasons, a reasonable factfinder could conclude that the Plaintiff's evidence of the jail's conduct meets the Eighth Amendment threshold.

First, a reasonable factfinder could conclude that Plaintiff contracted TB in the Porter County Jail, because he was negative at intake and positive a few months later. The Jail Defendants argue that the notation in Plaintiff's intake records showing that Plaintiff was "negative" for TB means only that he was *asked* whether he had a recent TB test, and reported having a negative one. (DE 126 at 9.) But at the very least, the records are ambiguous, so at the summary judgment stage Plaintiff is entitled to the interpretation that favors his case. Plaintiff has also stated in an affidavit that he was tested (DE 121-15, Pl. Ex. N at 1), which is a matter within his personal experience. Thus, a factfinder could reasonably conclude that Plaintiff did test negative for TB in August 2010. And from a negative TB result at intake and a later positive result, it is reasonable to infer that Plaintiff contracted TB while he was in jail.

Second, if Plaintiff contracted TB in jail, a reasonable factfinder could additionally conclude that Plaintiff caught TB because some inmates were not properly screened. Warden Widup's testimony that medical screenings were "hit and miss" provides a sufficient basis for such a conclusion. Defendants argue that Plaintiff cannot have been injured by inadequate screening, because he was properly screened. (DE 125 at 14.) But this fails to address Plaintiff's contention he was injured, not by any defect in his own screening, but by the jail's failure to ensure that other inmates were screened.

Third, a factfinder could conclude that in choosing not to address the insufficient

7

screenings, the Sheriff's Department had adopted a custom and practice that was deliberately indifferent to a substantial risk of serious harm. Contagious disease is a well-known serious risk in jails, and one which the Supreme Court has identified as a potential source of Eighth Amendment violations. *Helling v. McKinney*, 509 U.S. 25, 33 (1993). The ACH medical screenings were known to be "hit and miss." In this particular case, in view of the known serious risk and the known inadequacy of the ACH screenings, the Department's repeated failure to address the screening issue at any of the times that the ACH contract was revisited (for example, in 2007 or 2009) could support a finding of deliberate indifference.

The Department's subsequent change in contracting arrangements also has some relevance. Under the Federal Rules of Evidence, such a "subsequent remedial measure" cannot be admitted to show culpable conduct, but can be admitted to show the "feasibility of precautionary measures." Fed. R. Evid. 407. Thus in this case, the Department's later change in contractor could support a finding that the Department could have acted to address the inadequate screenings before Plaintiff's detention, but did not. Accordingly, given the unique circumstances of this case, a factfinder could reasonably conclude that the screenings were inadequate, that the Sheriff's Department knew they were inadequate, and that the Sheriff's Department could have acted to address this inadequacy but consciously chose not to do so. Such findings could in turn support a finding of deliberate indifference.

Fourth, having made these findings, a factfinder could readily conclude that the Department's deliberate indifference actually and foreseeably caused Plaintiff's TB. TB is, after all, exactly the kind of harm that would be expected to result from inadequate TB screenings.

Fifth, a factfinder could conclude from the relevant physician testimony that the seizures Plaintiff suffered, allegedly as a result of missing a dose of medication, were also a foreseeable consequence of the inadequate TB screenings. Thus, despite not having

8

experienced any symptoms of TB, in his seizures Plaintiff arguably suffered a foreseeable injury *from* the TB.

On the unique facts of this case, therefore, Plaintiff has a viable § 1983 claim based on the allegedly inadequate screenings for TB during his pretrial detention.

### (c) Plaintiff's claim can survive only at the policy level, because there is no evidence to inculpate any individual defendant

Although Plaintiff has shown that a reasonable jury could find that the Sheriff's Department's custom and practice violated his Eighth Amendment rights, he has not provided enough evidence to single out any specific person for individual liability. Under § 1983, individuals are responsible only for the constitutional violations they themselves commit. *Kuhn v. Goodlow*, 678 F.3d 552, 555–56 (7th Cir. 2012). Such violations are actionable only if they actually caused the injury complained of. *Farmer*, 511 U.S. at 835. Thus, in this case, no individual defendant can be liable unless they personally and knowingly exposed Plaintiff to a heightened risk of TB, such as by putting him in proximity to a prisoner with active TB.

Plaintiff has furnished no evidence of any such deliberate action by any of the individual Defendants, or even of a specific known risk to which he could have been deliberately exposed. On this point, the parties dispute whether there was a known case of active TB at the Porter County Jail when Plaintiff was incarcerated. That dispute turns on a single statement: in responding to Plaintiff's interrogatories, Sheriff Lain stated that there was a prisoner with active TB at the jail in 2010; however, he promptly retracted this statement and explained that the case of active TB actually occurred in 2012. (DE 126 at 17–18; DE 126-1, Lain Ex. Q at 3.) Apart from this swiftly-retracted statement, Plaintiff has presented no evidence of a prisoner with known active TB at Porter County Jail in 2010. Considering the complete lack of other evidence for any active case of TB in 2010, and the testimony of

9

Nurse House and others that there was no such prisoner in 2010 but there was one in 2012, the only reasonable conclusion is that the Sheriff made a mistake. Plaintiff is entitled to reasonable inferences in his favor, but no reasonable person could infer from this evidence that there really was a known case of active TB in the jail in 2010. Thus, Plaintiff cannot show that any specific person with TB slipped past the medical screening as a result of a specific Defendant's deliberate indifference. The most he can show is a probability that some inmate with active TB went unscreened and unnoticed. Accordingly, there can be no basis for finding that any individual Defendant exhibited deliberate indifference to a risk of Plaintiff contracting TB from any specific inmate.

Plaintiff's deliberate indifference claim can survive only as a claim that he was injured by a general practice of inadequate TB screenings. As a result, Plaintiff cannot hold any of the named defendants liable in their individual capacities. First, as to the Jail Defendants, Plaintiff has presented no evidence to suggest that any county employee, even Sheriff Lain, had the level of authority necessary to singlehandedly change the contracting arrangements at the Porter County Jail. Second, as to Nurse House, although titled "medical director," she was simply an employee of the contractor ACH, which is not a defendant in this action. Plaintiff has presented no evidence Nurse House's position gave her authority to address understaffing issues, or that she was personally dilatory in performing screenings. Therefore, summary judgment must be granted for all defendants in their individual capacities on the TB claim, because there is no evidence to show that any of them were individually responsible for Plaintiff's TB.

But that is not the end of the matter. Plaintiff has sued Sheriff Lain in his official capacity, which is a suit against the Porter County Sheriff's Department, a municipal entity. A municipality can be liable under § 1983 if the municipality itself, through a policy or custom, deprives a person of constitutional rights. *Monell v. Dept. of Soc. Servs. of the City of*

*N.Y.*, 436 U.S. 658, 694 (1978). Such liability can be found under three circumstances: "(1) through an express policy that, when enforced causes a constitutional deprivation; (2) through a widespread practice that although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) through an allegation that the constitutional injury was caused by a person with final policy-making authority." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005).

Here, the Department's acceptance of ACH's inadequate screenings over a period of several years could be sufficient to show a "custom or usage" of ignoring the jail's written policy, which can support *Monell* liability. Accordingly, with respect to Plaintiff's claim of inadequate TB screenings, even though he has not provided a sufficient basis to hold any individual Defendant liable, Plaintiff has provided a sufficient basis for § 1983 municipal liability.

### (d) Plaintiff did not have active TB

Although there is evidence that Plaintiff had some symptoms that were consistent with active TB, the parties dispute whether he actually did have active TB, since his sputum test was negative. Extensive portions of Plaintiff's response briefs are dedicated to arguing that he had active TB. In particular, Plaintiff disputes that the sputum test for active TB is dispositive, and asserts that the diagnosis of active TB is "not a certain up to the minute thing." (DE 121 at 18.)

But the question of whether Plaintiff's symptoms were caused by active TB is a question of a medical causation. Generally, medical causation requires expert testimony. *McGown v. Arnold*, No. 1:13-CV-148, 2014 WL 5502612, at *6 (N.D. Ind. Oct. 30, 2014). Plaintiff is not a medical professional, and although Plaintiff points to some testimony by physicians noting that some of his symptoms were consistent with active TB, he has not

produced any statements saying that he actually had active TB. Without such a statement by a qualified expert, there is no basis for a finding that Plaintiff had active TB. Since latent TB has no symptoms, whatever TB-like symptoms Plaintiff had, there is no evidence they were actually due to TB. Plaintiff's claim for inadequate medical care leading to TB is therefore limited to whatever injury he suffered from his latent TB.

### (e) Plaintiff's constitutional rights were not violated by the shutoff of running water

A prisoner is not entitled to his preferred medical treatment. *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996). A constitutional violation arises only when there is deliberate indifference to a serious medical need. *Id.* For example, a doctor's failure to administer a local anesthetic before removing a prisoner's toenail is not an Eighth Amendment violation. *Id.* In this case, jail medical records indicate that the shutoff of water in Plaintiff's cell in early 2011 was an effort by Nurse House to get to the bottom of Plaintiff's complaints of constipation. (DE 122-1 at 19.) Although Plaintiff has alleged that Nurse House had a retaliatory motive for the shutoff of water in his cell, he has supported this only with speculation. (DE 121 at 36–39.) As an alternative basis for his claim that the shutoff of water was unconstitutional, Plaintiff cites *Thomas v. Brown*, 824 F. Supp. 160 (N.D. Ind. 1993), where the court found that a lack of running water could support an Eighth Amendment claim. However, in that case there was no medical basis for the lack of running water.

Plaintiff may not care for Nurse House's way of verifying his complaint of constipation, but that dissatisfaction does not provide a basis for a constitutional complaint. Accordingly, the water shutoff cannot support a constitutional claim against Nurse House or the jail staff who followed her instructions.

### (f) Plaintiff's constitutional rights were not violated by a missed dose of

**medication**

The Eighth Amendment does not protect prisoners against negligence, only deliberate indifference. *Farmer*, 511 U.S. at 837. Plaintiff has provided only hearsay to support a causal link between missed doses of medication and his seizures, but even if that connection was proven, the missed medication was due to a conflict between Plaintiff's schedule and the med pass scheduling at the Porter County Jail. (DE 121 at 55–56.) There is no evidence that the personnel in charge of med pass arrangements were even aware of Plaintiff's INH treatment, or of any risk of seizure. Thus, there is no possible basis for finding deliberate indifference based solely on these occasional missed doses of medication.

**(g) None of Plaintiff's other allegations reach the Eighth Amendment threshold**

Plaintiff and Defendants dispute the details of his treatment during incarceration at length, including such matters as whether he found a battery nail in his food on October 17, 2011 (DE 121 at 4), or whether the medical information of other prisoners may have been posted on the staff whiteboard (DE 121 at 21.) Plaintiff also states that jail medical staff failed to properly treat various of his complaints. But to defeat summary judgment, Plaintiff must demonstrate a genuine dispute of *material* fact. Plaintiff is not constitutionally entitled to his preferred medical care, and has not explained how the alleged inadequacies in his care rise to the level of deliberate indifference. Apart from the issues of TB, water shutoff, and missed medication reviewed above, he has presented no evidence of plainly inadequate care, nor has he submitted qualified expert testimony to show that the jail's medical care was not up to a particular standard. Nor has he shown any tangible injury from the alleged inadequacies in care. No Eighth Amendment violation is apparent from any of the details of the voluminous jail records that both sides have reviewed in their briefs. Thus, to the extent that Plaintiff's § 1983 claim relates to aspects of his incarceration other than the contraction

of TB, Defendants are entitled to summary judgment on these aspects.

### (2) All state law claims against the Jail Defendants in their individual capacities are barred by the Indiana Tort Claims Act

Under the Indiana Tort Claims Act (ITCA), a "lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally." Ind. Code § 34-13-3-5(b). The ITCA standard for scope of employment is broad: if an employee's conduct is of the same general nature as that authorized or incidental to the conduct authorized, it is within the scope of employment. *Wilson v. Isaacs*, 917 N.E.2d 1251, 1258 (Ind. Ct. App. 2009). Even reckless and criminal conduct can be within the scope of employment if the conduct is "closely associated with the employment relationship." *Kemezy v. Peters*, 622 N.E.2d 1296, 1298 (Ind. 1993).

In this case, there is no dispute that the Defendants' conduct in administering medical care to Plaintiff was part of their everyday duties related to the operations of the Porter County Jail. Plaintiff argues that the reckless actions that he has alleged cannot be within the scope of employment. (DE 121 at 65.) But as reviewed above, even criminal conduct can be within the scope of employment under ITCA. Plaintiff's argument is without foundation in Indiana law. Therefore, all Jail Defendants are entitled to summary judgment in their individual capacities on Plaintiff's state law claims for negligence and intentional infliction of emotional distress.

### (3) The negligence claim against Nurse House is not supported by adequate evidence

Under Indiana law, the standard of medical care in a medical negligence case must generally be established by competent expert testimony. *Gipson v. United States*, 631 F.3d 448, 451 (7th Cir. 2011). This requirement does not apply, however, if the negligence is so

glaring that even a layperson could recognize it. *Id.*

Plaintiff has alleged a plethora of allegedly inadequate or inappropriate medical actions by Nurse House and the jail staff acting at her direction, but has provided no evidence as to the applicable standard of care. Without such evidence, this Court is ill-suited to judge a medical professional's medical choices. Therefore, summary judgment must be granted for Nurse House on the negligence claim.

**(4) The Sheriff's Department is not liable for ACH's negligence**

ITCA provides that a government entity is not liable for an act or omission by an independent contractor. Ind. Code § 34-13-3-3(10). The exception covers even non-delegable duties. *Bartholomew Cnty. v. Johnson*, 995 N.E.2d 666, 679 (Ind. Ct. App. 2013). Governmental entities can be held liable only for their own direct negligence, for example if a county has negligently maintained a bridge that an independent contractor built. *Id. Bartholomew County* broke from earlier Indiana case law that had denied the independent contractor exemption in the case of nondelegable duties. *Id.*

Under Indiana law, the county sheriff must "take care of the county jail and the prisoners there." Ind. Code § 36-2-13-5(a)(7). This includes a duty to provide proper medical care. *St. Mary's Med. Ctr. of Evansville, Inc. v. Warrick Cnty.*, 671 N.E.2d 929, 931 (Ind. Ct. App. 1996). In this case, on the basis of the same facts reviewed for Plaintiff's § 1983 claim, a factfinder could reasonably conclude that ACH negligently failed to properly screen inmates for TB, and that the Sheriff's Department negligently failed to ensure that such screenings took place.

But such a finding would be no help to Plaintiff. Even though the Sheriff's Department had a nondelegable statutory duty to Plaintiff, under *Bartholomew County*, the Sheriff's Department cannot be liable for ACH's negligence. Accordingly, the Sheriff's

Department is entitled to summary judgment on Plaintiff's negligence claim.

**(5) Plaintiff did not suffer an intentional infliction of emotional distress**

As discussed above, the Jail Defendants are immune from liability in their individual capacities under the ITCA. Thus, the IIED claim could only possibly succeed as a claim against the Sheriff's Department or Nurse House. But even without ITCA immunity, Plaintiff's IIED claim fails against all Defendants, for the following reasons.

Under Indiana law, the elements of IIED are "that the defendant: (1) engages in extreme and outrageous conduct (2) which intentionally or recklessly (3) causes (4) severe emotional distress to another." *Curry v. Whitaker,* 943 N.E.2d 354, 361 (Ind. Ct. App.2011). The plaintiff must rigorously prove the elements of the tort. *Id.* In an appropriate case, the claim can be decided as a matter of law. *Id.*

Indiana courts have repeatedly quoted with approval the Second Restatement's formulation that IIED liability does not exist unless "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46, cmt. D; *see e.g. Bah v. Mac's Convenience Stores, LLC*, 37 N.E.3d 539, 550 (Ind. Ct. App. 2015); *Lindsey v. DeGroot*, 898 N.E.2d 1251, 1264 (Ind. Ct. App. 2009).

As stated above, Plaintiff cannot hold any of the Defendants personally liable. But in any case, applying the Restatement criteria to this case, no possible interpretation of the facts could lead to a finding that any defendant committed IIED. Plaintiff focuses on the shutoff of water in his cell, and his subsequent feelings of humiliation, as the basis for his IIED claim. (DE 121, pp. 66–68.) But as with the corresponding part of his § 1983 claim, Plaintiff simply has not carried his burden of providing the kind of evidence that would be necessary for a reasonable factfinder to conclude that this shutoff was extreme and outrageous. A reasonable

factfinder might defer to Plaintiff's own testimony as to his emotional harm, and as to the cause of that harm. But his claim still founders on the requirement that the conduct be "extreme and outrageous." For this, Plaintiff relies solely on conclusory allegations, perhaps feeling that the deprivation of running water speaks for itself. In a non-medical context, Plaintiff might be right. But Plaintiff's humiliation and occasional thirst are no greater than many other routine indignities involved in medical care. And the same evidence on which Plaintiff relies for the shutoff shows that it was done to verify Plaintiff's complaints of constipation, which were inconsistent with his physical symptoms. (DE 122-1 at 19.) A shutoff of water for such a bona fide medical purpose, even if it was unreasonable or misguided, can scarcely be deemed "utterly intolerable in a civilized community."

Thus, because Plaintiff has presented no evidence that can support an IIED claim, summary judgment must be granted on this claim for all defendants.

**E. Conclusion**

Defendant Kim House's motion for summary judgment (DE 114) is GRANTED. Jail Defendants' motion for summary judgment (DE 117) is GRANTED IN PART and DENIED IN PART. Specifically, Jail Defendants' motion is GRANTED as to Plaintiff's federal claims against the Jail Defendants in their individual capacities. Jail Defendants' motion is further GRANTED as to Plaintiff's state law claims for IIED and negligence. Jail Defendants' motion is DENIED as to Plaintiff's § 1983 claim against the Porter County Sheriff's Department, to the extent that this claim relates to Plaintiff's contracting TB while in Department custody.

SO ORDERED on November 6, 2015.

   S/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE